Filed 10/29/15  P. v. Vang CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LUCKY VANG,<br><br>    Defendant and Appellant. | F069322<br><br>(Super. Ct. No. F11906520)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Houry A. Sanderson, Judge.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P.J., Franson, J. and Peña, J.

## INTRODUCTION

Appellant Lucky Vang was convicted of rape of a child under the age of 14 years, two counts of committing a lewd act on a child, and two counts of continuous sexual abuse of a child. In addition, it was found true that the multiple victim circumstances in Penal Code section 667.61, subdivision (e)(4) applied. He contends defense counsel rendered ineffective assistance of counsel by failing to exercise due diligence to exclude evidence of uncharged sexual acts committed by Vang when Vang was under 14 years of age. We conclude Vang was not prejudiced by the admission of the evidence and we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On November 11, 2011, J.V. and her sister, K.V., ran away from home, where they lived with their parents, their brother Vang, and numerous other brothers and sisters. J.V. was 11 years old at the time; K.V. was 9 years old. Vang was 18 years old. While the girls were missing, investigators obtained information from their siblings about sexual abuse of the girls.

Before running away, J.V. told one of her older sisters, N.V., that Vang touched her in the shower. J.V. also told another sister, M.V., that Vang was having sexual intercourse with her. Three weeks before running away, J.V. told yet another sister, C.V., that Vang was "fucking" her in the shower and that this had been happening for a while. C.V. took this to mean rape or forced sex.

On November 12, 2011, the girls were found approximately two miles from their residence. The girls were returned to their home, where Detective Thaoseng Xiong of the Fresno Police Department interviewed J.V.; the interview was recorded. J.V. told Xiong she ran away because Vang was raping her, which to J.V. meant "putting his penis inside my pussy." Vang last had sexual intercourse with her a few days before she ran away. J.V. stated when she was in preschool, Vang began putting his hands inside her

2.

underpants and touching her "pussy." Vang began having sexual intercourse with her when she was in first or second grade.

J.V. said Vang began assaulting her sister, M. (not M.V.), when M. was in first grade. Starting when J.V. was in fourth grade and M. was in third grade, Vang would sometimes have intercourse with both of them in the bathroom. J.V. saw Vang have intercourse with M. more than 10 times. Sometimes she saw Vang ejaculate. Vang sometimes told them to stroke his penis.

On November 16, 2011, Detective Kristine Hawk of the Madera County Sheriff's office interviewed M. and recorded the interview. Hawk had extensive training in investigating sexual assault crimes. During the interview, M. stated that Vang would hit her and her sisters if they did not do something right. Sometimes the sisters would be in a circle and Vang would force them to take turns hitting each other.

M. stated Vang started touching her when she was in second or fourth grade. The last occasion was a few days before J.V. and K.V. ran away. On that occasion, they were in the bathroom and Vang took off her clothes, touched her vagina, and then penetrated her. M. told Hawk that one time, Vang penetrated her while they were on a bed.

M. did not see Vang doing anything sexual to any of her sisters. J.V. told M. that Vang had raped her, too, but did not tell M. how or where it happened. M. said she did not tell anyone what was happening because Vang told her several times, "I'm gonna kill all you guys," if she told anyone.

Vang was interviewed at police headquarters on November 12, 2011. After receiving warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Vang spoke with officers and admitted having sexual intercourse twice with J.V. One time occurred in the shower; he could not remember the circumstances of the other incident. Vang also admitted to intercourse with M. a maximum of two times, both in the shower.

Vang stated he knew it was illegal to have sex with children; he did it because he could not control himself. Vang stated he did not want to go home because he might do

3.

it again.  During the interview, Vang wrote a letter to M. and J.V. apologizing for his actions.  In the letter, Vang states he is "not good" and "very sorry."  He asked them to forgive him because he was "stupid" and "evil."  Vang states that he is "crying inside because of how sick and evil I am," but "sometimes I just can't control myself."

An information filed November 29, 2012, charged Vang with two counts of committing a lewd act on a child (counts 1 and 4), one count of rape of a child under 14 years of age (count 2), and two counts of continuous sexual abuse of a child (counts 3 and 5).  Multiple victim circumstances within the meaning of Penal Code section 667.61, subdivision (e)(4) were alleged as to all counts.

The trial court heard motions in limine on January 27, 2014.  Defense counsel objected to introduction of evidence of uncharged acts that occurred several years prior, when Vang was "much younger than 18."  Defense counsel articulated concerns regarding admission of Evidence Code[1] section 1108 evidence.  The trial court asked if defense counsel had "any case law that says if the 1108 evidence is when the person was a juvenile that it could not come in as 1108 in his adult case?"  Defense counsel responded, "Not aware of any, Your Honor."

The trial court went on to state, if a "separate witness was a minor under the age of 14, and defendant at the time was also a minor, there is no barring of that evidence; correct, if 352 analysis is completed and the probative value outweighs any prejudice to the defendant?"  Defense counsel responded, "I can't say.  I'm not disagreeing with the Court."  The trial court ruled that the testimony given by J.V. to the officer in the interview would be admissible.

Trial by jury commenced on January 29, 2014.  At the trial, J.V. testified she had intercourse with Vang twice a week throughout 2011, up to the week before she ran away.  On the last occasion, J.V. tried to push Vang away and asked him to stop, but he

---

[1]     References to code sections are to the Evidence Code unless otherwise specified.

pressed her against a wall and continued until he ejaculated. J.V. testified that on several occasions, Vang touched M. on her breasts and vagina, and took turns having intercourse with M. and J.V., when both were in the shower with him.

J.V. testified Vang threatened to kill her if she told anyone what he was doing to her. She was angry with Vang, in part because he hit her quite a bit. Sometimes Vang and the sisters would form a circle and Vang would hit the person in the middle of the circle.

M. testified at trial that Vang had intercourse with her in the bathroom once or twice a week for more than three months. Sometimes J.V. also was in the bathroom and Vang would penetrate J.V. as well. M. testified she did not try to stop Vang because she was scared. M. testified that Vang hit her several times; sometimes the siblings were in a circle and took turns hitting each other.

N.V. testified that at least twice during 2011 she saw Vang wake J.V. up and say, "Let's go" at a time when everyone was supposed to be asleep. After J.V. left the bedroom, N.V. would hear the water go on in the shower. N.V. testified that Vang never hit her and she never saw him hit J.V.

M.V. testified she saw Vang and J.V. come out of the bathroom together one time. On one occasion, she saw Vang go into the bathroom with M. On two occasions, Vang hit M.V. for "discipline." M.V. did not remember seeing Vang hit either J.V. or M. Another sister, C.V., testified Vang hit her sisters, but could not remember which sisters he hit.

Dr. Randall Robinson, a clinical psychologist, testified regarding child sexual abuse accommodation syndrome. Robinson stated preteen victims tended to not resist or report abuse, or to disclose details gradually.

Vang testified in his own defense. He stated that on one occasion, he had J.V. assist him in the shower because he was intoxicated. When he vomited on her pants, she left and returned wearing just her shirt. Vang held on to her shoulders and later kissed

5.

her, but he did not touch her breasts or vagina. At some point while kissing her, he realized what he was doing was wrong and stopped.

Vang testified another time when it was dark, he came home and went to use the shower; M. was by the bathroom door. He did not recall being with her or what he did with her. It was possible he had sex with M. while he was drunk. Vang testified he definitely never had sex with both of the girls together.

According to Vang, he disciplined all the children at home. He would hit M. or J.V. if they lied or went out. He did not recall any occasion when the children formed a circle and the child in the middle was hit.

Vang explained his statement to officers by saying his references to sex meant sex with other girls, and his reference to inappropriate sexual contact in the shower meant kissing and hugging. Vang agreed that sex meant when a man penetrated a woman's vagina with his penis, but asserted it meant other things as well.

The letter Vang wrote was "according to [what] the officers wanted me to write." When he asked M. and J.V. to forgive him, he meant for times when he was drunk, would yell at them, and hit the other children.

On February 5, 2014, the jury found Vang guilty of all charges and found the allegations to be true. On April 28, 2014, the trial court imposed sentence. A term of 25 years to life was imposed for the count 3 conviction; consecutive terms of 25 years to life were imposed for each of the count 2, 4, and 5 convictions; and a concurrent term of 25 years to life was imposed for the count 1 conviction. The total term was 100 years to life, with credit for 1,033 days in custody. Various fines and fees also were imposed.

Vang filed a timely notice of appeal on April 29, 2014.

## DISCUSSION

Vang contends he received prejudicial ineffective assistance of counsel because defense counsel failed to cite the trial court to *People v. Cottone* (2013) 57 Cal.4th 269

(*Cottone*) to prevent admission of section 1108 evidence that occurred when Vang was a juvenile. We conclude any ineffective assistance was not prejudicial.

In reviewing the record, we noted that the abstract of judgment fails to specify the term imposed for the count 3 offense. We will direct the preparation of a corrected abstract of judgment.

## I.     Section 1108 Evidence

Vang contends he received prejudicial ineffective assistance of counsel because defense counsel failed to cite the trial court to *Cottone, supra*, 57 Cal.4th 269 to prevent admission of section 1108 evidence that occurred when Vang was a juvenile. Vang, however, was not prejudiced by admission of this evidence.

Vang was born in 1993; J.V. was born in 2000. J.V. told Detective Xiong that Vang began molesting her when she was in preschool. This information was testified to at trial by Xiong, who stated that J.V. informed him the molestation began when she was in preschool. Vang contends this information was not admissible because he would have been under 14 years of age at the time.

We agree with Vang that the section 1108 evidence of uncharged acts he committed while under the age of 14 years is subject to special scrutiny before it may be admitted. The trial court is obligated to evaluate whether "a defendant had the capacity to understand the wrongfulness of his or her conduct, under Penal Code section 26[, paragraph One], as a threshold question to admitting an unadjudicated sexual offense" committed by a defendant when he or she was under 14 years of age. (*Cottone*, *supra*, 57 Cal.4th at p. 282.) The trial court failed to address this threshold question and make the necessary determination, either during the hearing on the motions in limine or at any other time prior to its admission at trial. The trial court had a duty to make the determination on whether the evidence was legally admissible in light of Penal Code section 26, paragraph One (Penal Code section 26(One)). (*Cottone, supra,* at p. 285.)

Moreover, the People, as the party proffering the evidence, had the burden of proving by clear and convincing evidence that Vang understood the wrongfulness of the unadjudicated offense(s) pursuant to Penal Code section 26(One). (*Cottone*, *supra*, 57 Cal.4th at p. 286.) Penal Code section 26(One) creates a rebuttable presumption that a child under the age of 14 years is incapable of committing a crime. (*Cottone, supra,* at p. 280.) This determination is a foundational question that must be established for admissibility under section 1108 and the People have the burden of producing evidence on this point. (*Cottone, supra,* at pp. 281, 285-286.)

In order to prevail on a claim of ineffective assistance of counsel, Vang must show that: (1) defense counsel's representation fell below an objective standard of reasonableness, *and* (2) he was prejudiced by defense counsel's deficient representation. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Cain* (1995) 10 Cal.4th 1, 28.)

Regardless of whether we assess the issue as one of trial court error or ineffective assistance of counsel for failing to more forcefully object to admission of the challenged section 1108 evidence, the standard for assessing prejudice is the same: whether it is reasonably probable a result more favorable to Vang would have been reached absent the error. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694; *People v. Callahan* (1999) 74 Cal.App.4th 356, 363.)

Vang contends admission of this one piece of evidence was prejudicial because "it cannot be determined whether the jury convicted [Vang] of count three based on admissible evidence or inadmissible prior acts evidence when he was less than fourteen" and because it was impossible to tell what "spillover effect the inadmissible evidence had on count five, the continuous abuse of M.V." This argument ignores the instructions to the jury.

The prosecutor argued that "all the charges in this case relate to when he's an adult." The jury was specifically instructed that the continuous sexual abuse counts

related to acts occurring on or after February 27, 2011, which would have been Vang's 18th birthday. Absent evidence to the contrary, and here there is no such evidence, we presume the jury followed the instructions. (*People v. Prince* (2007) 40 Cal.4th 1179, 1295.)

Moreover, the evidence that Vang committed the charged acts was overwhelming. Vang admitted when interviewed by police that he knew it was wrong to have sex with children; admitted having sexual intercourse with J.V. twice; and admitted having intercourse with M. twice. J.V. and M. both testified at trial. M. testified that Vang had intercourse with her once or twice a week for more than three months; the last occasion was a few days before her sisters ran away. J.V. testified that Vang had intercourse with her twice a week throughout 2011, up to the week before she ran away. M. and J.V. both consistently stated that Vang threatened them if they told anyone about his conduct.

Other witnesses provided corroborating testimony. J.V.'s sisters M.V., N.V., and C.V. all verified that J.V. had told them of the sexual abuse by Vang. Both M.V. and N.V. testified to observing Vang behave in a manner that supported J.V.'s testimony: Vang would wake J.V. up when everyone was asleep and then the water would go on in the shower; Vang was seen coming out of a bedroom with J.V. and going into the bathroom with her. J.V. saw Vang sexually molest M.

In light of Vang's admissions and the testimony of the victims and other witnesses, it is not reasonably probable the outcome would have been any different if the challenged section 1108 evidence had been excluded. Consequently, there is no prejudice. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694; *People v. Callahan, supra,* 74 Cal.App.4th at p. 363.)

## II.    Abstract of Judgment

The abstract of judgment correctly notes that Vang was convicted on all five counts and sets forth the term imposed for counts 1, 2, 4, and 5. The term imposed by the trial court for count 3, 25 years to life, is not specified on the abstract of judgment.

Appellate courts may order the correction of abstracts of judgment that do not properly reflect the oral pronouncement of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) When there is a clerical error in the abstract of judgment, "the appellate court itself should order the trial court to correct the abstract of judgement." (*Id.* at p. 188.)

The abstract does not reflect the term imposed by the trial court for the count 3 offense, therefore we will direct that a corrected abstract be prepared.

## **DISPOSITION**

The judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment to reflect the term imposed for the count 3 offense and to disseminate the corrected abstract to the appropriate authorities.